Case No. 14-7075, Saima Ashraf-Hassan v. Embassy of France and the United States Appellant. Mr. Chaunier for the Appellant, Mrs. Devae for the Appellate. May it please the Court, my name is Pierre Chaunier. I am representing the Embassy of France and I will reserve three minutes of my time. This is a hostile work environment case. I will not go into the details of the allegations. I think it is sufficient to say that they are very grave and that they would constitute a hostile work environment if true. The question before the Court today is whether the French Embassy should be immune from jurisdiction under the Foreign Sovereign Immunities Act. We believe that although at the time, at the beginning of this case, it appeared that the Embassy was not immune, we do believe that a lot of things occurred since then that makes the case that the Embassy is immune. Initially, the plaintiff in that case filed two kinds of claims. One was based on a breach of contract and the other one was the type of a tort claim based on harassment. Initially, we conceded right away that Mrs. Ashraf, the plaintiff in this case, is not a governmental employee. Therefore, the first kind of claim was clearly based on the contract and therefore the immunity of the Embassy did not apply. Likewise, in regard to the tort claims, Mrs. Ashraf alleged that one kind of damages out of that tort claim was the loss of her employment. Therefore, here again, there was a clear link between the tort claim and the commercial activity of the Embassy. However, since then, three major developments occurred. The first one is the fact that the lower court dismissed the breach of contract claim. So the important consequence of that dismissal is the fact that now in regard to the tort claim, Mrs. Ashraf cannot any longer rely on the loss of her employment. She has to rely on the tortious action of her co-workers and in turn, she has to make the French Embassy vicariously liable for that tortious action in order to again connect it to the commercial activity. And this is where the second development takes all its importance. The second development is a recent decision of the Supreme Court in the Vance case, a decision that occurred in June of 2013. And that decision is very important because it changed the definition of supervisors in order to create vicarious liability on the part of the Embassy. Prior to Vance, it was sufficient that the alleged harasser had some kind of supervisory authority. It was enough if that supervisor was supervising the work of that plaintiff. With Vance, it's no longer the case. The Supreme Court made it clear that you need to show some evidence that the alleged harasser had some tangible authority over the plaintiff. And the Supreme Court was very specific that it includes only hiring, firing, or demoting. In this case, there are none. But now I come to the third development, which is probably even more consequential than the two others. It's the fact that at the end of discovery, we have a lot of contradictory statements from the plaintiff on key issues that touch either both the immunity claim of the Embassy as well as its motion for summary judgment. But that third aspect is why you think you should prevail on summary judgment. I'm not sure that goes to the commercial activity exception here because it does seem that the plaintiff here was in a purely administrative position, was not a civil servant, was not involved with governmental decisions. I think you agree with all that. And once you agree with all that, it seems like the commercial activity exception applies. You may prevail, think you should prevail on summary judgment or prevail at trial, but I'm not sure how we could get out of saying the commercial activity exception applies under our precedence given the status of the employee. That's what I'm not understanding. Well, Your Honor, the fact that she's a governmental employee is not enough. She has to show also that her claim is based on the contract, on the commercial activity of the Embassy. But the claim depends on her employment with the Embassy. The claim depends on her employment with the Embassy. Your Honor, I agree. But now there is only one claim that is remaining. It's the harassment claim. And for that claim to be related to the commercial activity of the Embassy, she's not alleging that it's the Embassy that is harassing her. She's alleging it's the coworkers who harassed her. I understand. And if I may continue, for that harassment of her coworkers to be imputed to the Embassy, she has to show vicarious liability. And for that purpose, she has to show that these alleged harassers were supervisors. And that's where the contradictions come into play. Because among several of these contradictions, she's giving us a statement. Statements that these alleged harassers didn't have the authority to take this tangible action on the events, and therefore are not supervisors. But she's also alleging based on the prior test that they were. So that's where these contradictions are very important. Likewise. But the commercial exception applies to actions that are based on the commercial activity, correct? So her claims here flow out of being employed by the Embassy. And that fact doesn't change, even if some of the actions are dismissed. Well, Your Honor, I would agree that, again, in regards to the breach of contract claim, it is clearly based on the commercial activity of the Embassy. But again, we are talking about a harassment claim. I'd like to make a connection with the... You know, doesn't that flow from her having been employed by the Embassy? And that's what invokes the commercial exception. Yes, but it is a little bit similar as the decision of this Court in El Adat. In El Adat, there was a breach of contract claim, but there was also a defamation claim. And the Court, without any analysis or explanation, took jurisdiction over the defamation claim because, allegedly, the defamation caused the termination of the contract. But here now, we are in a different situation, and I would submit that, in El Adat, if the contract, for example, if the plaintiff had come up with only a defamation claim, that is, the plaintiff still being employed by that foreign government, I would submit that the Court would have said, well, the defamation claim... The Embassy has to be immune from the defamation claim because it's no longer related to the contract. And it's even more important because when you look at the FISA, the Foreign Sovereign Immunities Act, it's clear that jurisdiction over the personal injury case is very limited. In fact, when you look at the, I think it's Section 5, that deals with personal injury, it's very limited only basically to personal injury in case of an accident. So likewise, when you look at the decision of Worldwide Minerals, of this Court, the Court didn't extend the waiver to anything else than the contract. I mean, in Worldwide Minerals, they were alleging a lot of torts, and the Court there, it went even farther than in El Adat. It basically said, no, it cannot include the claims for torts. Nobody anticipated them, and therefore, same thing when you look at the commercial exception. The commercial exception is clearly set up to cover only something that is directly related to a contract, a commercial activity. Now, the reason why we are here, it's not because Mrs. Ashcroft is telling us that she didn't make all these contradictions, and I'm throwing contradictory statements. She is not genuinely disputing that she made them. We are here simply because she is arguing that it doesn't make any difference that she made these contradictions because the lower court doesn't have the authority to consider them. And the lower court agreed with her. The lower court relied on the decision in Liberty Lobby. But, Your Honor, it's clearly Liberty Lobby doesn't give us any guidance because in Liberty Lobby, we were in a typical case where the plaintiff is saying A and the defendant is saying B. And as long as A is reasonable, the case has to go before a jury. But we are not in that type of case, Your Honor. We are in a type of case where the plaintiff is saying A and B. So, therefore, Liberty Lobby didn't give any guidance as to what to do, what the lower court should do, should the lower court believe A or B. For this, we have to look at two other cases. One is a decision from the Supreme Court in Scott v. Harris that set the standard of review for the purpose of a summary motion judgment. And then we also need to look at the decision of this court in Phoenix that set the same standard of review but for the purpose of the motion on immunity. The two standards are the same. Both of them would require a weighing of the evidence. And it's obvious why. If you look at the case of Scott v. Harris, like in our case, the plaintiff was showing two different stories. The case, the issue was whether the police used excessive force. And the plaintiff was showing that, obviously, the police used excessive force because I was driving without creating any danger to anybody. I was driving like if I were taking my driving test. And then there was another story. Because in that case, there was a video, a video showing a completely different story. As Judge Scalia said, the video showed that it was a chase of the type of a Hollywood type chase where everybody was in danger. So Judge Scalia and the majority opinion in that Scott v. Harris held that when you are confronted with a situation like this, when the plaintiff is giving us a story that is blatantly contradicted by the record, you cannot take it as true for the purpose of summary judgment. You have to go behind it and weigh the evidence, weigh these contradictions. And likewise, this court in Phoenix, again, there, not for the purpose of summary judgment, but for the purpose of ruling on the motion for immunity of the foreign government, ruled that when the foreign government has challenged the factual underpinnings of the exception to its immunity, the court cannot rely. I think the court said cannot merely rely on the allegations of the plaintiff to defeat the immunity, but the court has to go beyond that, has to do a factual investigation and therefore weigh on the evidence. So, Your Honor, this is what we are asking, just the court to apply the same standard as again, and also that this court applied for the purpose of summary judgment motion in the case of Ben Cattell. That's exactly the same situation, even worse in our case in the way that we have contradictions from the plaintiff. In Ben Cattell, it was just the fact that the position of the plaintiff was overwhelmingly contradicted by the record. Again, here, it's even more, it's worse, it's because plaintiff is giving us conflicting statements. And likewise, we will request that standard to be applied like the court did in the worldwide, many worlds, and we feel confident, Your Honor, with that proper application of the standard of review that the court would find that these two motions of the embassy should be granted. If you have any questions, I would like to reserve my time. Thank you, Mr. Shah. Thank you. Thank you. May it please the court, Catherine Davey for appellee. The embassy acknowledged the district court's jurisdictions over all of Ashraf Hassan's complaints without reservation in its answer to the complaint on page 57 of the appendix. This admission was a waiver pursuant to 1605A1. Congress explained in the legislative history of the Foreign Sovereign Immunities Act at HR 94-1487 that failure to raise sovereign immunity in a responsive pleading is a waiver. The embassy failed to raise immunity amongst the defenses enlisted at pages 54 and 55 of the appendix, but it went beyond merely failing to waive immunity. It explicitly and without reservation conceded that the district court had jurisdiction over all of Ashraf Hassan's complaints. You keep saying without reservation, but I seem to recall that there was a condition. That is a different and subsequent statement that the embassy made in its first motion to dismiss. I'm referring to its answer to the complaint, which was its first responsive pleading at page 57 of your appendix, in which the embassy wrote, the district court has jurisdiction over this matter. That statement by the embassy was in response to Ashraf Hassan's statement in her complaint that the embassy was not immune because of the choice of law clause in the contract, which constituted a waiver of immunity, and because of the commercial activities exception. By failing to refute either of those allegations at that time, the embassy not only conceded that it was not immune, it also provided evidence of its intent at the time that it signed the contract with Ashraf Hassan. At that time, it recognized it was subject to United States law. Again, at page 64 of the appendix, which is also in the answer to the complaint, the embassy again wrote that the contract, the embassy admitted that the contract was for locally recruited employees and that local jurisdiction applied. If I don't go on the waiver ground, what's your best argument? Well, that's a bit like Sophie's Choice, Your Honor. But the commercial activities exception undoubtedly applies here, as the district court held. And conveniently, Judge Brown wrote in her footnote, in her first footnote to El Haddad, that separating the kinds of claims in the commercial activities exception would defy logic. The question for the court, when determining whether the commercial activities exception applies, is what were the employee's job duties? First, was she a civil servant, which the embassy has conceded repeatedly that she was not? And second, what was the nature of her duties? Again, the embassy repeatedly emphasized that her position was entirely administrative. In addition, the embassy makes an error. Her claims were not different. The claims that were dismissed by the district court were not breach of contract claims. They were Title VII claims as well. All of the claims brought before the district court were Title VII. So if we agree with you on that, we don't need to wade into the waiver? Correct. In addition, the embassy would have you take appellate jurisdiction over the lower court's decision on motion for summary judgment and the request for reconsideration of the same. Courts only exercise pendant jurisdiction where substantial considerations of fairness or efficiency demand it, such as where the orders are inextricably intertwined, or where review of the pendant issue is necessary to ensure meaningful review of the properly appealable issue. The embassy never raised immunity in any of its pleadings on the motion for summary judgment, the request for reconsideration of the same, or in response to the discovery orders. It is in no way related to the issues properly before the court today. In addition, as the court established in Cohen, the appellate court should not take jurisdiction over orders that are reviewable on appeal from final judgment, and discovery orders as well as decisions on summary judgment are reviewable after final judgment. So the court does not have authority to take jurisdiction over the discovery orders and the decision on summary judgment today. The court has no further questions. No. It appears there are none. Thank you. Thank you. Mr. Chaudhary, you have one minute. Thank you, Your Honor. First, I would like to address the contention that we didn't raise the immunity in the answer. It's true that we didn't raise it in the answer, but it's undeniable that that answer was filed at the same time and together with our motion to dismiss. And it's clear the first page of the motion to dismiss, that's where we included the waiver, the qualification, and the condition for it. So I think it's a little bit a stretch for the plaintiff to argue that we should draw some consequences from the fact that we didn't repeat it in the answer. In this case, assuming that the court would find that we waived it, I think that would not be the end of the issue, because we are not talking about only the personal jurisdiction of the court over the French embassy. We are also talking about subject matter jurisdiction. And it's clear that subject matter jurisdiction cannot be waived, that the conduct of a party cannot have an impact on subject matter jurisdiction. I think the decisions of the Supreme Court on that point is a group who, as well as Conring, that, again, whether or not the embassy waived its immunity, you still have to look at whether the court has subject matter jurisdiction. And for that, you have to look at whether the claim is based on the commercial activity. And likewise, I think in Conring, the court said that subject matter jurisdiction can be raised at any time. Now, there is also – I'd like to go back just a minute above the claim that it's not – that everything is based on the commercial activity. Again, at this time, the only thing that remains before the court is the harassment claim, harassment by co-workers. That activity of these co-workers can be connected to the commercial activity of the embassy only if the embassy would be responsible for it. And in turn, the embassy can be responsible for it only if Ms. Ashraf can show that these alleged harassers were supervisors. And we – Thank you, counsel. Thank you, Your Honor. We understand your argument. I'm sorry. Thank you. The case will be submitted.
judges: Brown, Kavanaugh, Wilkins